(Mahoning County Court of Common Pleas.)

JOHN B. NESSLE ET AL. *v.* R. W. HUM ET AL.

---

*School regulation requiring the reading of the Bible as an opening exercise in school.*—The legislature having placed the management of the public schools under the exclusive control of directors, trustees, and the boards of education, the courts have no rightful authority to interfere by directing what instruction shall be given, or what books shall be read therein. The courts have therefore no power to interfere against a regulation duly adopted by a board of education, requiring that a portion of the Bible be read in the schools of their district as an opening exercise. And such regulation is not in violation of any provision of the constitution of Ohio, or of the United States.

(Decided November, 1894.)

---

JOHNSTON, J.

In the case of John B. Nessle et al. against R. W. Hum et al., as the Board of Education of Lowellville Village School District, and H. H. Bower et al, teachers of the district, the plaintiffs allege that the Board of Education of Lowellville, on the 4th of September, 1893, at a regular meeting of the board, among other things, adopted the following resolution : "Moved by Robert Ernskine, and seconded, that a portion of the Bible be read in schools of this district as an opening exercise." Plaintiffs allege that the schools of this village were open and have ever since been open for the purpose of instructing the children of the village in accordance with the constitution of the United States and the state of Ohio, and the laws thereunder. That they are citizens of the village and residents of this district, and have children of school age who are required by law to attend said school ; that they with others are taxed for the support of this school, which is under the control and management of this board of education. And they aver that they are all entitled equally to the benefits thereof, of having their children instructed therein ; that they are very much divided, however, in opinion and practice upon matters connected with religious belief, worship and education. That many of the citizens, as well as part of these plaintiffs, do not believe the writings embraeed in any version of the Bible to be considered as containing an authoritative declaration of religious truth. That a large number of the citizens, and some of plaintiffs, together with their children are members of the Roman Catholic church, and conscientiously believe in its doctrines, faith and form of worship, and that the people of this church are taught to believe, and do believe, that the Bible referred to in this motion or resolution of the board of education, being what is commonly known as King James' Translation, is inaccurate, and does not furnish a correct rule of faith or religious belief.

They say, in pursuance of this resolution or motion of the board, a copy of the King James Translation of the Bible has been furnished to the superintendent and teachers of this school, and that the same is read in each of the rooms where schools were and are now held, and read as the opening

exercise in pursuance of this motion. They allege that this action of the board is unauthorized by law, and an unwarranted interference with their rights and with the rights of their children and the children of the other parents of said school who either do not believe in the Bible, or who belong to the Roman Catholic church, and that this action is contrary to the constitutions of the United States and of the state of Ohio, and the laws thereunder, and in violation of their rights under the law as it now exists. And they pray in their petition that the defendants, and each of them, be perpetually enjoined from teaching and reading the Bible within the public schools in this district, and for such other and further order as is deemed lawful.

To this petition various demurrers have been filed by the different defendants, not only by the members of the board of education as individuals, but by each one of the teachers individually, and also by the board of education in its corporate capacity. And the question that is now presented, is as to whether or not the facts stated are sufficient to constitute a cause of action, and entitle the parties to the relief demanded.

There are some other allegations in regard to the Bible being taught in the schools by [these teachers, but since the resolution of the Board of Education relates only to its being read as an opening exercise, I have not stopped to consider the other questions, and have considered only the questions arising upon the demurrer of the board of education alone.

The question which is here presented, is not a question as to what the law *should* be, but simply a question as to what the law *is* in reference to the matter complained of.

There is no question made as to any want of proper organization on the part of the board, nor as to any want of regularity in the action of the board, but the sole question which is urged, and the one to which attention is directed is, as to whether or not this board, in making the order in regard to the reading of the Bible in the schools, has exceeded the authority conferred upon it by law, or whether the same is warranted by law.

By reference to the school laws of this state, it will be seen that section 3985 provides, amongst other things, "that the board of each district shall make such rules and regulations as it may deem expedient and necessary for its government and the government of its appointees and the pupils." And section 4017 further provides that "the board of education of each district shall have the management and control of the public schools of the district." These two sections, taken together or separately, indicate clearly that the entire management, control and supervision of the schools in any district in the state has been entrusted and is now entrusted to the board of education of such district.

In the case of *Sewell* v. *Board of Education*, found in 29 Ohio St., page 89, a question kindred to the one under consideration was before the Supreme Court of this state. In that case the complaint was, that a son of the plaintiff had been excluded from the school for the reason that he refused to comply with the order of the board requiring that all pupils should be prepared with a rhetorical exercise at a time appointed by the board and by the teachers of the school, unless they were excused on account of sickness or other reasonable cause.

In this case the plaintiff, Sewell, complained of the action of the board in excluding his child from school, the child having failed and refused to comply with this order, and of the order thus made.

The Supreme Court, in considering the question, amongst other things held, that such a rule was reasonable, and that boards of education are authorized by law to adopt and enforce necessary rules and regulations for the government of the schools under their management and control. This, in connection with the two sections I have already referred to, would

seem to indicate clearly that it was intended by the legislature that the control, management and supervision of the schools in this state, and in each district of the state, should be placed in the hands of the board of education of such district.

In the case of *The Board of Education of Cincinnati* v. *Minor et al.*, 23 Ohio St. at page 211, a question very closely allied to the one at bar, was presented to the Supreme Court and determined by it. In that case resolutions had been adopted by the board of education as follows: *First*—" Resolved, that religious instruction and the reading of religious books, including the Holy Bible, are prohibited in the common schools of Cincinnati, it being the true object and intent of this rule to allow the children of the parents of all sects and opinions, in matters of faith and worship, to enjoy alike the benefit of the common-school funds." *Second*—" Resolved, that so much of the regulations on the course of study and the text-books in the intermediate and district schools, as reads as follows: ' The opening exercises in every department shall commence by reading a portion of the Bible by or under the direction of the teacher, and appropriate singing by the pupils,' be repealed."

The entire rule quoted from was as follows: " The opening exercises in every department shall commence by reading a portion of the Bible by or under the direction of the teacher, and appropriate singing by the pupils. The pupils of the common schools may read such version of the Sacred Scriptures as their parents or guardians may prefer, provided that such preference of any version, except the one now in use, be communicated by the parents and guardians to the principal teachers, and that no notes or marginal readings be allowed in the schools, or comments made by the teachers on the text of any version that is or may be introduced."

It will be observed that the complaint in this case was the *rescinding* of a portion of the order which had been in force for some time, regarding the reading of a portion of the Bible in the schools. The action was brought to enjoin the board of education and certain of its members and officers from carrying into effect and enforcing these resolutions.

The case was argued at length, and a very elaborate opinion prepared by Judge WELCH. The court unanimously decided, as is shown by the syllabus in the case, that, "the constitution of the state does not enjoin or require religious instruction, or the reading of religious books, in the public schools of the state."

"*The legislature having placed the management of the public schools under the exclusive control of directors, trustees, and boards of education, the courts have no rightful authority to interfere by directing what instruction shall be given, or what books shall be read therein*"; and for these reasons the Supreme Court refused to interfere with the action of the board of education, or to restrain them from enforcing and carrying into effect the resolutions mentioned.

It is the latter clause of the syllabus to which attention is invited. The principle there laid down, it occurs to me, is the principle which should control in determining the question raised by the demurrer in this case. If it be the law, and there can be no question but it has been so held, that the courts have no rightful authority to interfere or direct what instruction shall be given, or what books shall be read in the schools, then clearly the authority of this court cannot be invoked to restrain the board of education from exercising any authority which by law is placed under the exclusive control of the board of education.

It is urged, however, in this case, that even though the legislature may have in *form* conferred upon the board of education these general powers in the matter of the management and control of the schools under their charge, or that even though the Supreme Court may have so decided that this power was exclusively vested in the board of education, yet that at-

tempt to confer such power on the board of education, or the attempt on the part of the board to exercise such power, is in conflict with the provisions of the constitution.

The provisions relied upon in support of this proposition are found in section 7 of article 1, and section 2 of article 6, of our constitution. Section 2 of article 6 provides, that " the General Assembly shall make such provisions, by taxation or otherwise, which, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect or sects shall ever have any exclusive right to, or control of any part of the school funds of this state."

Section 7 of article 1, reads: "All men have a natural and indefeasable right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect or support any place of worship, or maintain any form of worship, against his consent, and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. No religious test shall be required as a qualification for office, nor shall any person be incompetent to be a witness on account of his religious belief; but nothing herein shall be construed to dispense with oaths and affirmations. Religion, morality and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction."

The case of Minor against the Board of Education, just referred to, is the only case in this state to which my attention has been called, or which I have been able to find, in which the question of the reading of the Bible in the schools has been brought directly before the Supreme Court of this state, and in which the constitutional rights that flow from the provisions just quoted, and which the plaintiff in this case clams to have been interfered with and invaded by the action of the board of education of this village district, are discussed, and a construction placed upon these provisions and the rights of citizens under them. In that case it is claimed by counsel that the situation was so different and the facts so dissimilar that the opinion rendered can scarcely be regarded as being entirely decisive, inasmuch as the question in *this* case was not directly involved in the determination of the questions in *that* case.

I find, however, that a case largely similar to the one at bar has been determined by the Supreme Court of the state of Maine (38 Maine 379), in which the constitutional provisions in regard to the rights of conscience and religious belief are almost identical with those of our own constitution, or at least so nearly so as to furnish a very correct solution of the question which is involved in this case, as to whether or not this claimed constitutional right has been invaded by the action of the board complained of in this case.

Without stopping to recite the facts in that case farther than to say, that in the town school in the village of Ellsworth, in the state of Maine, a pupil was expelled for refusing to read in the school of which she was a member, the Protestant version of the English Bible which had previously been ordered to be used therein by the Board of Education of the village. In that case the Supreme Court decided, among other things, that the superintending school committee, as it was there called, corresponding to our board of education, had the right to make and enforce the order requiring pupils to read the Bible in the schools, and expel them on

their refusal so to do.  And in the syllabus of that case the court say, that "no' scholar can escape or evade such requirement, when made by the committee, under the plea that his *conscience* will not allow the reading of such book.  Nor can the ordinance be nullified, because the church, of which the scholar is a member, hold, and have so instructed its member, that it is a *sin* to read the book prescribed."

"A law is not uncontitutional, because it may prohibit what one may *conscientiously* think right, or require what he may *conscientiously* think wrong.

"A requirement by the superintending school committee, that the Protestant version of the Bible shall be read in the public schools of their town, by the scholars who are able to read, is in violation of *no constitutional provision,* and is binding upon all the members of the schools, although composed of divers religious sects."

Taking this as a precedent for the construction of the constitutional provisions in our own state, and as a precedent for the rights which parents and pupils may have growing out of and arising from these constitutional provisions, it is very apparent, if this precedent is followed, that no constitutional right has been invaded, and that no right has been infringed upon, or will be, by the reading of the Bible in the schools as directed by the order of the board of education in this case.  And there being no right invaded, and this whole matter being within the jurisdiction and control of the board of education, it follows that the plaintiffs are not entitled to the restraining order asked in this case, and that the demurrer filed to the petition by the board of education should be sustained.

As to the policy or propriety of the order made by the board of education, it is unnecessary to make comment.  The only question raised and as already suggested, is, what the law now is, and what the rights of the parties are, and under the law should be, or what construction should be placed upon it.  It is sufficient for all the purposes of this case in determining the questions presented, to ascertain what authority has been conferred upon the board of education by the legislature, and to ascertain whether or not the authority thus conferred is warranted by the constitution of this state.

Believing that the board has full authority to act, and has the exclusive control of the management and conduct of the scholars within that district, and there being no want of good faith alleged in the petition on the part of the board, but only their authority called in question, and believing that the act granting the board of education this exclusive control and management of the schools is not in conflict with any of the constitutional provisions mentioned, there is no question as to the failure of this petition to state a cause of action against the defendants, the board of education of the village of Lowellville.

*John S. Roller,* for plaintiff.

*James B. Kennedy, Pros. Att'y,* for Board of Education.